UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SUZANNA M. SMITH,

          Plaintiff.


    v.                6:03-cv-1527

JO ANNE B. BARNHART,
Commissioner of Social Security,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

   This action was brought by Plaintiff Suzanna M. Smith pursuant to 42 U.S.C. § 405(g), seeking review of the denial of her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in August 2000.

**I.  BACKGROUND**

   Plaintiff applied for Disability Insurance Benefits (DIB) and Social Security Insurance (SSI) in August 2000, claiming that she had been disabled for at least one month beforehand. At the time of the hearing before the Administrative Law Judge (ALJ), Plaintiff was twenty-six years old. Plaintiff's original application for benefits listed her primary medical ailments as low reading comprehension, no left hand, and asthma. According to the hearing record, Plaintiff does not normally see a physician (other than for her pregnancies) and does not have a treating physician. Instead, she normally goes to the emergency room (ER) for

medical treatment. Plaintiff graduated from high school, during which she received special education. She lives with her mother and children.

Plaintiff's application for benefits stated that she was unable to work, but she also reported that she was currently employed and working. Plaintiff previously held a job at a restaurant, where her duties included separating pasta into portions, making salads and changing the salad containers.

**Plaintiff's Medical History**

In June 2000, prior to the alleged onset date of the disability, Plaintiff went to the ER with complaints of ankle pain, explaining that she had fallen the previous day. The examining doctor diagnosed her with an ankle sprain and provided her with an air splint and crutches.

After submitting an application for benefits, Plaintiff saw several different doctors during visits to the ER. In August 2000, Plaintiff went to the ER with complaints of pain in her right hand. While there, she explained that she lifted her son and also lifted at work. The diagnosis during this visit was right hand pain. An X-ray showed nothing significant. Plaintiff was told to wear a splint at night and was given a prescription for Naprosyn.

In January 2001, while she was pregnant, Plaintiff was examined by Dr. Bartolone. Dr. Bartolone also evaluated her intelligence and concluded that she had some difficulty with mathematics, but that her other functions (such as memory and ability to relate) were normal. Dr. Bartolone diagnosed her with congenital absence of the left hand, obesity, pregnancy, and asthma by history (T144).

In February 2001, Plaintiff was evaluated by a psychologist, Dr. House. Dr. House found that Plaintiff was alert and cooperative. While her spelling and punctuation were poor,

her verbal and oral abilities were adequate.  Dr. House also administered the Wide Ranging Achievement Test and the Weschler Adult Intelligence Scale.  The tests revealed that Plaintiff could read on a third-grade level and generally functioned in the low average range of intellectual functioning (T146).  The tests did, however, reveal that she exhibited poor adaptive behavior, including problems planning ahead and caring for her child.

In April 2001, Plaintiff went back to the ER for treatment of respiratory problems.  Plaintiff had recently given birth to twins.  At the ER, she was examined by Dr. Chu.  The examination was normal, except Dr. Chu noted wheezing and some diminished breath sounds.  A chest X-ray and echocardiogram did not show anything abnormal.  Dr. Chu diagnosed Plaintiff with amniotic fluid emboli (T153).

Also in April 2001, a state psychologist, Dr. Fyans, reviewed Plaintiff's medical record and concluded that her mental impairment would not place great limitations on her functioning.  Dr. Fyans' interpretation was later supported by the review of another state psychologist, Dr. Beers.  Another state physician, Dr. Burris, also reviewed Plaintiff's medical record in April 2001.  He concluded that Plaintiff had adapted to having one hand because the other had been missing since birth.  He also explained that the asthma appeared to be controlled and that Plaintiff should be able to lift and carry ten pounds and sometimes even twenty pounds using her right hand only.  Dr. Burris further concluded that Plaintiff would be able to walk or stand and sit for periods of up to six hours.  Dr. Burris noted that Plaintiff could not climb ladders or ropes, but could balance, kneel, and crouch.  Plaintiff did not appear to have any limitations on the use of her right hand.  The record was void of any visual, communicative or environmental limitations (T159).  Another state physician, Dr. Graham, also reviewed the record in April 2001.  He determined that Plaintiff's impairments,

as evidenced by her medical record, did not meet the requirements of a disability under the federal guidelines.

In April 2001, Plaintiff was examined again by Dr. Chu. In that examination, Plaintiff allegedly told the doctor that her asthma had been well-controlled with the use of Flovent and that she had very few episodes of exacerbation. At that time, Plaintiff was only using her Albuterol on an as-needed basis. Dr. Chu instructed Plaintiff to continue with Flovent and to use Albuterol as needed. More tests were planned.

In May 2001, Plaintiff had a pulmonary function test. The test was interpreted by Dr. Block as indicating normal vital capacity with possible mild airway obstruction (T154, 155). Plaintiff's lung capacity was normal.

Dr. Chu examined Plaintiff again in June 2001 and reported that, since using Flovent regularly, Plaintiff had not had to use Albuterol. Plaintiff's lungs were clear and the asthma seemed controlled.

In July 2001, another state physician, Dr. Bilinsky, reviewed the record and concluded that Plaintiff's medical impairments would not classify her as disabled for purposes of obtaining Social Security benefits. Dr. Bilinsky further concluded that the episode of respiratory difficulty in April 2001 had been a post-delivery complication.

In September 2003, Plaintiff submitted a form for employability to the Tioga County Department of Social Services. This form was submitted to the Appeals Council as another piece of evidence of a disability. However, the form, which was to be filled out and signed by a doctor, had no doctor's name on it. The diagnoses from the form were club arm and asthma. A box denoting total disability and inability to work was checked.

**Hearing Before the Administrative Law Judge**

At the hearing before the ALJ, Plaintiff explained that she left the job at the restaurant due to her pregnancy. She also said that she had a prosthesis for her missing limb, but had broken it in 1997 and did not use it at work. Plaintiff further explained that she had asthma. Plaintiff testified that before 2001 she was using a nebulizer every four hours and every six hours since 2001. According to earlier reports, Plaintiff was able to clean, go grocery shopping, prepare meals, and care for her children, albeit with help from her mother.

The ALJ solicited testimony from a vocational expert, Dr. James Ryan. Dr. Ryan listened to Plaintiff's testimony and reviewed the medical records. He classified Plaintiff's job at the restaurant as an "unskilled, medium job" (T41). The ALJ gave the vocational expert a hypothetical about a woman with the age, education, vocational background, and physical limitations identical to those of the Plaintiff. The expert identified several unskilled light jobs that Plaintiff could theoretically perform. These jobs included general clerical worker, quality control worker, laundry worker, and machine operator. The vocational expert went further to show that there were more than one-thousand positions of each job in the Baltimore-Washington metropolitan area where Plaintiff was living at the time of the hearing. There were more than 50,000 positions for each job in the national market.

The ALJ examined the facts in the context of the standard five-step analysis for disability benefits. Those steps were laid out in detail in Berry v. Schweiker. 675 F.2d 464, 467 (2d Cir. 1982). In the first step of the analysis, the ALJ determined that Plaintiff was not employed at the time of the hearing. She had previously held a job at a restaurant, essentially working as a prep cook. Although the precise date and reason for leaving are not clear from the record, Plaintiff left her job at the restaurant. At one point, Plaintiff stated that

she left because she wanted to take her children away from their abusive father. Another explanation is that she left due to a pregnancy.

The ALJ then moved to the second part of the analysis and determined that Plaintiff did have severe impairments, including asthma, a learning disorder, and a connective tissue injury (left hand was missing since birth).

At the third step of the analysis, the ALJ determined that Plaintiff's medical impairments did not meet the requirements listed in the CFR. Because the ALJ found that Plaintiff's impairments did not meet or equal those required, he moved on to step four of the analysis, which is whether the individual remains capable of performing her past relevant work regardless of the impairment.

In his fourth-step of the analysis, the ALJ determined that Plaintiff could perform certain work activities. For example, the ALJ concluded that she could stand and/or walk for six hours, and lift 10 pounds, but was limited to routine tasks. The ALJ found that her physical limitations would not render her unable to perform the same tasks she was previously performing at the restaurant as a prep cook.

In the last part of the analysis, the ALJ had to determine whether the Plaintiff was capable of performing any substantial gainful work that was available in the national economy. For this part of the analysis, the ALJ relied on the Medical-Vocational Guidelines as a framework and heard testimony from Dr. Ryan. The ALJ determined that Plaintiff could perform certain jobs, of which there were a substantial number in the national economy.

The ALJ concluded that Plaintiff was not disabled. On appeal, the ALJ's decision was upheld by the Appeals Council. Upon exhaustion of her administrative remedies, Plaintiff commenced this action.

## II.  STANDARD OF REVIEW

When a court reviews a final determination of the Commission, it "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts v. Barnhart, 388 F.3d 377 (2d Cir. 2004)(quoting Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)).  If it is shown that the evidence relied upon is substantial, the decision must be affirmed.  The court may choose to affirm, modify, or reverse the decision of the Commissioner.  The court may set aside a determination only if it is "based upon legal error or not supported by substantial evidence." Berry v. Schweiker, 675 F.2d at 467.  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., 675 F.2d at 467 (quoting Richards v. Perales, 402 U.S. 389, 401 (1971)).

## III.  DISCUSSION

The Social Security Act contains provisions for disbursing benefits to people with disabilities.  Eligibility for such benefits is dependent on the severity and duration of a person's physical impairments.  Generally, a person must "demonstrate inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A). An impairment is not disabling under the Act unless it is "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(a).

As discussed, the ALJ considers a five-step process to determine whether an applicant is unable to work in any job available in the national economy and, therefore, eligible for disability benefits. Those steps were laid out in detail in <u>Berry v. Schweiker</u>. 675 F.2d 464, 467 (2d Cir. 1982). This is a burden-shifting scheme, and both parties bear some kind of burden in the analysis.

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

<u>Perez v. Chater</u>, 77 F.3d 41, 46 (2d Cir. 1996); <u>see</u> <u>also</u> <u>Carroll v. Secretary of Health & Human Servs</u>., 705 F.2d 638,642 (2d Cir. 1983). Based on this analysis and the testimony of both Plaintiff and a vocational expert, the ALJ determined that Plaintiff was not disabled under the Act and was not entitled to disability benefits.

On appeal, Plaintiff argues that the ALJ did not fully develop the record as required by the proper regulations. Plaintiff also alleges that the ALJ's finding was not based upon substantial evidence. Among other things, Plaintiff claims that the ALJ erred by not considering her psychological impairments and medications, giving an incorrect hypothetical to the vocational expert during the hearing, and not allowing her to call a witness on her

behalf.  She also claims that the appeals council did not properly consider additional evidence when it denied review of the determination.

**<u>Was the ALJ's Decision Supported by Substantial Evidence?</u>**

The decision of the Secretary and the ALJ will be considered conclusive unless it is not supported by substantial evidence.  <u>Jones v. Sullivan</u>, 949 F.2d 57, 59 (3d Cir. 1991).  The ALJ's findings at step one and two are not contested by Plaintiff and are supported by substantial evidence.  The ALJ had several different medical opinions on which to support his finding that Plaintiff was not disabled and was capable of working at a job in the national economy.  Because Plaintiff did not have a regular treating physician, the ALJ examined the opinions of various doctors she had seen in the ER together with the opinions of state doctors who had reviewed Plaintiff's file.

Plaintiff was examined by several doctors during her visits to the ER.  The doctor she saw most frequently, Dr. Chu, provided opinions on the severity of Plaintiff's asthma.  After using Flovent, the asthma appeared to be under control with very little discomfort to Plaintiff.  Further, a pulmonary function test revealed that Plaintiff's lung capacity was normal and there was a possibility of only mild airway obstruction.

Dr. Bartolone also examined Plaintiff and found that she had no problems in her right hand and her joints had a full range of motion.  He found that Plaintiff had some trouble with mathematics, but her memory and ability to relate were both normal.  He diagnosed her with pregnancy, obesity, congenital absence of the left hand, and asthma.

Plaintiff was also examined by a psychologist, Dr. House.  Dr. House determined that Plaintiff's mental functioning was in the low average range.  Plaintiff had some trouble

reading and comprehending long paragraphs, but was able to perform most daily activities, such as grocery shopping, cleaning, and preparing meals.

In addition to the opinions from examining doctors, Plaintiff's record was also reviewed by several state doctors. Dr. Fyans, a state psychologist, believed that Plaintiff's mental impairments would impose only mild limitations on her functioning. This opinion was echoed by another state psychologist, Dr. Beers. Dr. Burris, a state physician, agreed with Dr. Chu that Plaintiff's asthma was controlled. He further concluded that Plaintiff had adapted to having one hand, because the other had been missing since birth. He further assessed that she could frequently lift 10 pounds, sit or stand for six hours at a time, had no restrictions on her right hand, was able to climb ramps and stairs, and could push and pull 10-20 pounds. Further, Dr. Burris did not find any communicative, environmental, or visual limitations. Dr. Graham supported these findings when he stated that, upon review of the record, Plaintiff did not fall into the disabled category. Dr. Bilinksy supported both Dr. Burris' and Dr. Graham's findings. Further, Dr. Bilinsky concluded that the episode of respiratory discomfort that Plaintiff experienced was a post-delivery complication.

The opinion of an applicant's treating physician is entitled to a measure of deference. See Holloran v. Barnhart, 362 F.3d 28 (2d Cir. 2004). Such an opinion can be controlling if the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Green-Younger v. Barnhart, 375 F.3d 99, 107 (2d Cir. 2003). Here, Plaintiff does not have a treating physician that she sees regularly. Rather, she goes to the ER when she has a medical problem. The ALJ was forced to rely on the opinions of the ER and state doctors that examined Plaintiff and reviewed her file. None of the opinions contradict each other.

When considered together, the opinions and results from various tests support the determination that Plaintiff is not disabled within the meaning of the regulations.

**Duty of the ALJ to Develop the Record**

Plaintiff next contends that the ALJ did not fulfill his duty to develop the record. An ALJ has an affirmative duty to develop the administrative record in a disability benefits case. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). The duty is heightened when the plaintiff appears before the ALJ *pro se.* See Cullinane v. Sec. of Dept. of Health and Human Servs., 728 F.2d 137, 1398 (2d Cir. 1984). In such a situation, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)(quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980)). It is the reviewing court's duty to determine whether the relevant facts were developed by the ALJ to protect the rights of the claimant.

At the hearing, the ALJ advised Plaintiff of her right to representation. He told her that she had four options regarding the representation. Record at 29. Plaintiff chose to continue the hearing without representation. Plaintiff claims that her companion, Robert Shannon, appeared at the hearing to testify on her behalf. The record shows that Mr. Shannon was at the hearing and that he had an off–the-record conversation with the ALJ in which he discussed claimant's attempt to get an attorney. The record shows that Mr. Shannon was sworn in for the hearing. Shannon had a short exchange with the ALJ at the beginning of the hearing and interjected once during claimant's testimony. Record at 33. Mr. Shannon was not otherwise questioned by the ALJ. At no time during the hearing was Mr. Shannon solicited for testimony, either by the ALJ or by Plaintiff herself.

The Plaintiff relies on Devora v. Barnhart, 205 F. Supp. 2d 164 (S.D.N.Y. 2002), arguing that the ALJ's duty to develop the record is heightened when the plaintiff does not have the full capacity to represent herself.  However, the help described in Devora involved assisting the plaintiff in receiving medical records and evidence in support of the case.  This affirmative duty is to "make every reasonable effort to help the claimant get medical reports from [his or her] own medical sources."  Devora, 205 F. Supp. 2d at 172 (quoting Perez v. Chater, 77 F.3d at 47).  While this duty includes obtaining testimony from necessary witnesses, in this case, Mr. Shannon is not a necessary witness. The ALJ has a duty to develop all relevant facts in a case and question the claimant about the alleged disability.  In this case, the ALJ had the relevant medical evidence at hand and questioned claimant about her disabilities, employment, and daily activities.  There is no indication that the ALJ was under any duty to compel Mr. Shannon to testify on Plaintiff's behalf even though claimant was appearing without representation.  For example, Plaintiff does not identify any evidence that Mr. Shannon would offer to change the result of her application.

If the ALJ did not sufficiently develop the record to make appropriate disability findings, "a remand for further findings that would so plainly help to assure the proper disposition of [the claim]... is particularly appropriate."  Butts, 388 F.3d at 385 (quoting Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999)).  For example, in Rosa, the ALJ did not take into consideration information from the plaintiff's doctor, so the findings were considered unsupported, making it necessary to remand the case.  Here, Plaintiff fails to identify what additional evidence should have been considered and why such evidence was necessary to the proper disposition of her claim.

Plaintiff also argues that the ALJ did not consider the cumulative effects of her impairments and did not consider the side effects from her various medications. In particular, Plaintiff claims that the ALJ did not consider her obstructive airway disease. However, the examining doctors called the obstruction "mild" and did not report that it would keep the Plaintiff from working.

Plaintiff had one episode of breathing difficulty. However, the examining doctor, Dr. Chu., ruled that it was a post-delivery complication. Plaintiff was examined several times and spoke to Dr. Chu about her asthma. In April of 2001, Plaintiff told Dr. Chu that the asthma was well-controlled using Flovent. Plaintiff only had a few episodes of irritation. A pulmonary function test revealed that Plaintiff had normal vital and lung capacity and that any airway obstruction was mild.

Plaintiff claimed at the hearing that she had to use a nebulizer every six hours and claims that this would keep her from holding a job. But this contrasts with the reports of various doctors. In fact, according to one doctor's report, Plaintiff said that she was not using the nebulizer every day. Even so, the ALJ said that she could not work in any position where she would be exposed to environmental irritants. Plaintiff also charges that the ALJ did not take into consideration her obesity. Plaintiff's weight falls between super and morbidly obese on the Body Mass Index (BMI) scale. There is no indication in the medical reports that Plaintiff's obesity was limiting her in anyway. She still had a full range of motion in her joints.

The ALJ does have a duty to consider the subjective complaints of the Plaintiff, including testimony about pain and suffering, but is also entitled to evaluate the Plaintiff's credibility to determine whether the Plaintiff suffers from a disability. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). Plaintiff also made no mention at the hearing that

she had side effects from the prescribed medication. Likewise, the medical record does not show that Plaintiff ever complained of adverse side effects to any of the physicians. The Plaintiff did not provide any such testimony at the hearing. In fact, when he was finished questioning claimant, the ALJ specifically asked her, "Anything else you'd like to tell me?" to which claimant replied, "Not right off hand." (Record, 40). Plaintiff did not at any time later in the hearing ask to provide more testimony. The ALJ therefore did not have any information regarding side effects and could not have considered them in his analysis.

Plaintiff next contends that the record was not sufficiently developed and that the hearing transcript was inaccurate. She argues that the transcript was confusing and made it difficult to know who was answering the questions. Plaintiff refers to page 33 in the Record where Mr. Shannon interjects during Plaintiff's testimony to explain her medical insurance situation. After the interjection, the ALJ says, "Let the record show that Mr. Robert Shannon, her friend, is here with her today." Record at 33. However, immediately after, the ALJ resumes his questioning of the Plaintiff. It is obvious that Plaintiff is being questioned because the ALJ refers to her as "Ms. Smith" and "Suzanne." The questions regarding Plaintiff's employment are clearly answered in the first-person. Therefore, the transcript itself is not confusing with regard to who is testifying.

**Was the ALJ's mistake of who was providing testimony harmless error?**

In his decision, the ALJ bases part of his analysis on testimony from the hearing. At the hearing, Plaintiff testified about her disability, employment., and daily activities. However, in his decision, the ALJ references the testimony of Mr. Robert Shannon, Plaintiff's companion. As previously discussed, the transcript from the hearing shows that Mr. Shannon did not provide such testimony and, in fact, only spoke about Plaintiff's medical

assistance and inability to find an attorney. Record at 33. In his decision, however, the ALJ attributes the testimony of Plaintiff to Mr. Shannon.

Plaintiff does not argue that the testimony of Mr. Shannon would have contributed anything unique to the record or that it would have changed the ALJ's determination. The testimony that the ALJ mistakenly attributed to Mr. Shannon in his decision is not erroneous; in fact, it is Plaintiff's testimony. The ALJ gave weight to the testimony that she was enrolled in special education, had asthma which was trigger by weather conditions, had to use a nebulizer every six hours, and needs some assistance with routine activities, such as tying her shoes and grooming her hair. Mr. Shannon did not contribute this testimony; Plaintiff offered this testimony when she was questioned by the ALJ.

The ALJ's mistake is not so significant as to render his duty to develop the record unfulfilled. The ALJ properly considered the testimony in his analysis. Attributing the testimony to Mr. Shannon was harmless error because the testimony was that of Plaintiff and was considered by the ALJ in his analysis.

**Was the hypothetical question to the vocational expert satisfactory?**

Plaintiff also argues that the ALJ did not present the vocational expert with an accurate description on which to base a hypothetical question. Specifically, Plaintiff argues that the ALJ did not mention Plaintiff's special education and limited ability to read and write. However, the ALJ did specify that the hypothetical individual had Plaintiff's education. In addition, the vocational expert had the opportunity to review Plaintiff's file and was aware of her education and her reading and writing capabilities. In response, the vocational expert limited Plaintiff to unskilled jobs that included simple tasks. There is no indication from the

medical file that Plaintiff could not handle the types of jobs suggested by the vocational expert.

**Did the Appeals Council properly consider the additional evidence submitted by Plaintiff?**

Plaintiff next claims that the appeals council did not consider the additional evidence submitted by Plaintiff.  In particular, Plaintiff submitted a form dated September 3, 2003, which was almost one year after the hearing before the ALJ.  The form was an employability form for the Tioga County Department of Social Services.  It was to be completed and signed by a physician.  However, the form was not signed and did not include a doctor's name.  The diagnoses on the form were club arm and asthma.

In Plaintiff's brief, she argues that the appeals council has a duty to explain what weight it gives to new evidence.  To be included in the administrative record, however, the evidence must be "new and material and must relate to the period on or before the ALJ's decision."  Perez v. Chater, 77 F.3d at 45.  Here, the form was dated September 3, 2003 and made no mention of a specific period of time, so there is no way to know if the asthma diagnosis corresponds to the time before the hearing.  In addition, because the form is not signed by a doctor, it does not represent a medical opinion and is not entitled to considerable weight.  Regardless, the notice from the appeals council stated that the additional material was considered, but was insufficient to change the determination of the ALJ.  The diagnoses on the form appear in other parts of the record and so are not new or material in any way.

**IV.    CONCLUSION**

For the foregoing reasons, the Court finds that the determination of the Administrative Law Judge is supported by substantial evidence.  Because the findings of the Secretary and

ALJ are supported by substantial evidence, they will be considered conclusive. This case is therefore DISMISSED. The Clerk of the Court shall close the file of this case.

IT IS SO ORDERED.

Dated: January 18, 2007

Thomas J. McAvoy
Senior, U.S. District Judge